IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOUTHWEST FUNDING, L.P. f/k/a TEXAS RESIDENTIAL MORTGAGE, L.P., SOUTHWEST FUNDING, L.P., JIMMY TINSLEY and DON YOUNT, | § § § § § | CIVIL ACTION NO. |
| Plaintiff, | § § | 3:05-CV-1950-K |
| V. | § § | |
| AURORA LOAN SERVICES, L.L.C., LEHMAN BROTHERS BANK, FSB | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Aurora Loan Services, L.L.C. ("Aurora") and Lehman Brothers Bank, FSB's ("LBB") (collectively "Defendants") Motion for Summary Judgment. The Court **GRANTS** the motion. Plaintiffs have failed to raise a genuine issue of material fact on any of their claims for relief. Aurora has established its entitlement to relief on its counterclaim. Defendants' Motion to Strike Plaintiffs' Summary Judgment Evidence (Doc. No. 62) and Defendants' Motion for Leave to File Supplement to Defendants' Motion for Summary Judgment (Doc. No. 96) are **denied as moot.**

**I. Factual and Procedural Background**

Plaintiff Southwest Funding, L.P., f/k/a Texas Residential Mortgage, L.P. ("Southwest") is a mortgage broker. Defendant LBB is a federally chartered savings

bank. Aurora, a wholly owned subsidiary of LBB, is a residential mortgage originator. Southwest entered into broker agreements with Aurora and LBB in May of 2003. The Broker Agreement between Southwest and Aurora forms the basis of the dispute in this case  Under the agreement, Southwest would "from time to time submit certain residential mortgage loans to [Aurora] for [Aurora's] evaluation and possible funding." Pursuant to the agreement, Aurora originated two home loans in June of 2004 ("the Harris loans"). The first loan was in the amount of $440,000; the second was in the amount of $110,000. The loans constituted a first and second mortgage for the property located at 2075 Broken Bend Lane, Frisco, Texas ("the property"). The borrower on the loan documentation was listed as Magnolia Harris. Harris denies executing the documents and claims that her signature was forged on the loan application and closing documents. The loans immediately went into default. Aurora soon discovered that the loan was substantially undersecured. Aurora demanded that Southwest repurchase the loans based on its contention that Southwest was contractually obligated to do so under the Broker Agreement. Southwest refused the demand to repurchase the loans.

Southwest filed suit in state court asserting a negligence claim. Donald Yount, President of Southwest, and Jimmy Tinsley joined as plaintiffs (Southwest, Yount, and Tinsley will be collectively referred to as "Plaintiffs"). Defendants removed the case to this Court on the basis of diversity jurisdiction and Aurora asserted

counterclaims based on Southwest's alleged breach of the Broker Agreement. John Parks, the Southwest loan officer responsible for the Harris loans, exercised his Fifth Amendment right against self incrimination when deposed about his involvement with the Harris loans. Similarly, Brian Burress, the purported seller of the property and Parks brother in law, exercised his Fifth Amendment right against self incrimination when deposed about his involvement with the Harris loans. Defendants now move for summary judgment on Southwest, Yount, and Tinsley's claims, and Aurora moves for summary judgment on its counterclaim.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322-25.

Where the nonmovant carries the burden of persuasion at trial, the movant may establish its entitlement to summary judgment without supporting evidence attached to its motion. *Celotex*, 477 U.S. at 323. The movant may do this by showing that the nonmovant has no evidence to support an essential element of its claim. *Id.* Where the movant carries the burden of persuasion at trial, the movant

must support its motion with credible evidence that would entitle it to judgment as a matter of law if not controverted at trial. *Celotex*, 477 U.S. at 331 (Brennan dissenting); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *Hitachi Capital Am. Corp. v. Med. Plaza Surgical Ctr., L.L.P.*, No. 06-1959, 2007 WL 2752692, at *2 (S.D. Tex. September 20, 2007). Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine issue of material fact for trial. *Id*. at 321-25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### III.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on Plaintiffs' claims against them, and Aurora moves for summary judgment on its counterclaim against Southwest. In Defendants' Motion for Summary Judgment, it appears that both Aurora and LBB are seeking summary judgment on contractual counterclaims. However, Aurora is the only defendant that asserted a counterclaim in this case. *See* Doc. No. 28. Consequently, the Court will address only Aurora's motion for summary judgment with respect to the contractual counterclaim.

### A. Plaintiffs' Claims

Plaintiffs appear to claim that Defendants were negligent in making their demand for repayment of the loans on Southwest and that Plaintiffs were injured as a result of Defendants' negligence. In their motion for summary judgment, Defendants argue that Yount and Tinsley lack standing to sue in their individual capacity and that Plaintiffs' negligence claims fail as a matter of law. Plaintiffs wholly fail to respond to Defendants' arguments. Because Plaintiff's are unable to point to a duty that Defendants' breached, the Court finds that Plaintiffs' claims for relief are without merit and that summary judgment is appropriate.

#### 1. Yount and Tinsley's Standing

Donald Yount, Southwest President, and Jimmy Tinsley joined Southwest in asserting its negligence claim against Defendants. Yount executed the Broker Agreement in his capacity as President of Southwest. Jimmy Tinsley's connection to Southwest is not clear from the summary judgment record. Defendants argue that Yount and Tinsley lack standing to sue because they lack privity of contract with Defendants. Plaintiffs, however, are asserting a negligence claim, so privity of contract is not necessary. In order to establish standing, Yount and Tinsley need only allege the existence of an injury "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v.* Wright, 468 U.S. 737, 751 (1984). Here, Yount and Tinsley have alleged the existence of a

financial injury caused by Defendants' alleged negligence. Based on this, the Court finds that Yount and Tinsely do have standing to assert negligence claims. Correspondingly, the Court has subject matter jurisdiction to decide those claims.

### 2. Negligence Claims

Defendants argue that Plaintiffs' negligence claims fail as a matter of law. Specifically, Defendants argue that Plaintiffs have failed to point to the existence of any duty or the breach of any duty. As noted by Defendants, Plaintiffs negligence claims are almost incomprehensible. In their state court petition, Plaintiffs allege the following:

> Defendants claim Plaintiffs previously entered into a Broker Agreement ("Agreement") regarding property located at 2075 Broken Bend Lane, Frisco, Texas and certain events have occurred and require certain actions. Defendants' actions and/or inactions regarding Defendants' allegations and the Agreement constitute negligence and have caused damages to Plaintiffs in excess of the minimum jurisdictional limits of the Court.

It is unclear to the Court what "certain events" require "certain actions." It is also unclear what specific "actions and/or inactions" constitute negligence. Plaintiffs failed to respond to Defendants motion for summary judgment on Plaintiffs' claims. Plaintiffs have not pointed to the existence of a duty owed to them by Defendants and have not articulated how any such duty was breached. Consequently, the Court agrees with the Defendants that Plaintiffs' claims fail as a matter of law, and summary judgment is appropriate.

**B. Defendants' Counterclaims**

Aurora argues that it is entitled to summary judgment on its contractual claim against Southwest. Because of a choice of law provision in the Broker Agreement, New York law governs this case. Under New York law, the elements of breach of contract are (1) the existence of an agreement, (2) adequate performance of the contract by the claimant, (3) breach of the contract by the party against whom the claim is asserted, and (4) damages caused by the breach. *Flash Electronics Inc. v. Universal Music and Video Distribution Corp.*, 312 F. Supp. 2d 379, 406 (E.D.N.Y. 2004). To prevail on is motion for summary judgment, Aurora must establish that no genuine issue of material fact exists as to each element of its claim. Under New York law, Aurora carries the burden of persuasion on each element of its claim at trial. *Raymond v. Marks*, 116 F.3d 466 (2nd Cir. 1997). Consequently, in order to meet its burden of production on its motion for summary judgment, Aurora must provide credible evidence that would entitle it to judgment as a matter of law if not controverted at trial. *Celotex*, 477 U.S. at 331 (Brennan dissenting)*; Fontenot* 780 F.2d at 1194. If Aurora satisfies its burden, the burden then shifts to Southwest to show the existence of a genuine issue of material fact for trial. *Id.* The existence of an agreement and adequate performance by Aurora are undisputed. Although Southwest's pleadings are not entirely clear, it appears to contest the issues of breach

and causation.

## 1. Breach of the Broker Agreement

Aurora argues that Southwest breached the Broker Agreement in numerous ways. Specifically, Aurora contends Southwest breached the agreement by failing to use its "best efforts" to prevent fraud in the loan transactions and by failing to maintain the integrity of the loan application process. The Broker Agreement required Southwest to use "its best efforts to ensure that nothing contained in any loan application package. . . is untrue, erroneous or misleading." Under New York law, "best efforts" requires more than "good faith," it requires the parties to pursue "all reasonable methods" in the fulfillment of their contractual obligations. *See Kroboth v. Brent*, 625 N.Y.S.2d 748, 749-50 (N.Y. 1995). Additionally, the agreement required Southwest to "maintain the integrity of [its] loan application and processing operations."

In order to satisfy its burden of production, Aurora points to answers to interrogatories where Southwest was unable to identify any effort it made to ensure that nothing in the applications for the Harris loans was untrue, erroneous, or misleading. Further, Southwest was unable to identify anything that it did to ensure that no fraudulent documents were present in the loan application.

Aurora also points to the undisputed fact that John Parks, the Southwest loan officer in charge of the Harris loans, and Brian Burress, the purported seller of the

property, are brothers in law and that Parks and Burress exercised their Fifth Amendment right against self incrimination when deposed about their involvement with the Harris loans.  In a civil case, the invocation of the Fifth Amendment right against self incrimination allows for an inference that the person invoking the right engaged in criminal conduct.  *Baxter v. Palmingiano*, 425 U.S. 308, 318 (1976); *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 521 (8th Cir. 1984).  Moreover, it is undisputed that Southwest did nothing to supervise Parks in his capacity as the loan officer in charge of the Harris loans.

Southwest makes no attempt to argue that Parks was not involved in fraudulent activity.  Instead, Southwest makes a feeble attempt to distance itself from Parks by referring to him as an "independent contractor" in an effort to avoid responsibility for his conduct.  Regardless of whether Parks was an employee or independent contract, Southwest is responsible for Parks' conduct with respect to the Broker Agreement.  It is undisputed that Parks was appointed to be the loan officer in charge of the Harris loans, that he was responsible for ensuring compliance with the Broker Agreement, and that he was the only person associated with Southwest that was involved with the Harris loans in anyway.  On these facts, Southwest is responsible for Parks' failure to comply with the Broker Agreement.

If Aurora's summary judgment evidence was not controverted at trial, Aurora would be entitled to judgment as a matter of law.  Consequently, Aurora has satisfied

its burden of production, and the burden now shifts to Southwest to raise a genuine issue of material fact.

Southwest argues that it did not breach the Broker Agreement because there was no fraud in the underlying transaction. Southwest contends that Harris' claim that she was the victim of identify theft is a sham. Southwest's argument is misplaced. Southwest's contention, even if true, does not raise a genuine issue of material fact on the issue of breach. Regardless of whether Harris was the victim of identify theft, Southwest has failed to produce any evidence showing that it complied with the agreement. Southwest's argument is more appropriately considered an attack on Aurora's ability to establish that Southwest's breach caused Aurora's injury. Consequently, Southwest has failed to raise a genuine issue of material fact on the issue of breach.

### 2. Cause of Aurora's Injury

Aurora contends that it was injured as a result of Southwest's failure to comply with its obligations in the Broker Agreement. Specifically, Aurora argues that if Southwest had complied with its obligations to ensure that the loan information was not fraudulent, Aurora would not be the owner of an undersecured loan that is in default. Southwest does not dispute that Aurora has suffered an injury. Aurora's evidence establishing the breach of the Broker Agreement, combined with the undisputed injury, satisfies its burden of production. Now, the burden shifts to

Southwest to raise a genuine issue of material fact on the issue of causation.

Southwest appears to argue that Aurora's injury was not caused by Southwest's failure to comply with the Broker Agreement because there was no fraud in the underlying transaction.  If there was no fraud in the underlying transaction, then Aurora's injury could not possibly have been caused by Southwest's failure to comply with the Broker Agreement's provisions designed to prevent fraud.  Southwest contends that Harris defaulted on the loan and subsequently fabricated a story to make it seem like she was the victim of identify theft when in fact she knowingly purchased the property.  Put simply, Southwest contends that the only cause of Aurora's injury is Harris' failure to repay the loan.

Aurora submitted an affidavit from Harris stating that she did not execute the loan documents, that she did not authorize any person to execute the documents on her behalf, that she was not present at the closing for the purchase and sale of the property, and that her signature was forged on the loan application and closing documents.  Southwest attempts to challenge the affidavit by pointing to an email Harris sent to Quincy Smith, an individual Harris worked with in purchasing other properties.  In the email, sent after the closing date on the property, Harris states that she is "missing some information for the properties" and she knows "for certain that [she] does not have final loan papers on 2075 Broken Bend."  Southwest argues that this email is evidence that Harris knew about the purchase of the property and likely

authorized the purchase the property on her behalf.

The Court need not decide whether Southwest has raised a fact issue on the question of whether Harris knew about the purchase of the property.  To survive a motion for summary judgment, the nonmovant must raise a genuine issue of *material* fact.  A material fact is one that might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Here, the disputed fact does not affect the outcome of the suit.  Even if Southwest is correct that Harris knew about and authorized the purchase of the property, that is not evidence that there was no fraud in the underlying transaction.  Regardless of whether Harris was the victim of identity theft, an unknowing participant in a fraudulent scheme, or a knowing participant in a fraudulent scheme, Aurora nonetheless suffered an injury that would have been prevented if Southwest had not breached the Broker Agreement.  John Parks, Southwest's loan officer responsible for the Harris loans, and his brother in law, Brian Burress, the purported seller of the property, both exercised their Fifth Amendment right against self incrimination when questioned about their involvement with the Harris loans.  This evidence, combined with Aurora's undisputed injury, establishes that there was fraud in the underlying transaction.  Southwest has provided no evidence to counter this inference. Consequently, Southwest has failed to raise a genuine issue of material fact on the issue of causation.

## IV. Conclusion

Plaintiffs have failed to raise a genuine issue of material fact on any of their claims for relief. Aurora has conclusively established its entitlement to relief on its counterclaim. The Court **GRANTS** summary judgment for Defendants on Plaintiffs' claims. The Court **GRANTS** summary judgment for Aurora on its counterclaim against Southwest. Aurora is hereby **ORDERED** to submit a brief, with any supporting evidence, setting forth its damages and requesting any other relief sought within 20 days of the date on which this order is signed. Southwest is **ORDERED** to submit a responsive brief, with any supporting evidence, within 20 days of the date on which Aurora files its brief. Aurora may file a reply brief, but no additional evidence, within 10 days of the date on which Southwest files its brief.

**SO ORDERED.**

Signed October 16th, 2007.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE